238 N.J. Super. 606 (1990)
570 A.2d 481
CITICORP MORTGAGE, INC., PLAINTIFF-RESPONDENT,
v.
L. STEVEN PESSIN, DEFENDANT-APPELLANT, AND THERESA KLEIN, AND RICHARD HOLLANDER, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 22, 1990.
Decided February 22, 1990.
*607 Before Judges PETRELLA, O'BRIEN and STERN.
Baer, Arbeiter, Ploshnick & Pessin, attorneys for appellant L. Steven Pessin (L. Steven Pessin, pro se, on the brief).
William M.E. Powers, Jr., attorney for respondent (William M.E. Powers, III, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
The issue in this case revolves around the effect of the failure of the first mortgagee to name the assignees of a second mortgagee in a foreclosure action. Citicorp Mortgage, Inc. (Citicorp)[1] foreclosed on its first mortgage and thereafter brought a strict foreclosure action to cut off the rights of all *608 lienholders who had not been joined in the original foreclosure action. Citicorp had been the successful bidder at the sheriff's sale which followed the first foreclosure. The Chancery Division Judge concluded that despite the fact there had been an omission to join the assignee of the second mortgage, he had to balance the rights acquired by the purchaser under the foreclosure action against those of the omitted party. He fashioned an equitable remedy and allowed the junior encumbrancer the opportunity to pay off the senior mortgage indebtedness to preclude strict foreclosure.
L. Steven Pessin, one of the assignees, appeals and argues that Citicorp, as purchaser of the property, was not entitled to equitable relief, that strict foreclosure here would violate the recording act and that strict foreclosure should not have been granted.
The property which is the subject of this action is located in Piscataway Township. It was owned by Glen A. Holcombe, Sr. who executed a first bond and mortgage to Citicorp for $123,700 on November 10, 1986. On the same date Holcombe executed a second mortgage to Rudy Grillo, Sr. in the amount of $19,000. Both mortgages were recorded on November 25, 1986. The second mortgage was expressly subordinate to that of Citicorp. Both mortgages reflect that Pessin witnessed Holcombe's signature as mortgagor. Moreover, the second mortgage to Grillo bears Pessin's name as preparer. See N.J.S.A. 46:15-13. By assignment of mortgage dated September 18, 1987 Grillo assigned his mortgage to Theresa Klein, Richard Hollander and Pessin in consideration of payment of $10,500.[2] Pessin witnessed Grillo's signature on the instrument *609 of assignment and took the acknowledgment as an attorney at law. The assignment was recorded in the Middlesex County Clerk's office on October 16, 1987.
Three days later, on October 19, 1987, Citicorp filed a foreclosure action by a complaint dated October 13, 1987 which named the Holcombes and Grillo as defendants. Since the complaint was dated October 13, 1987, but not filed until October 19, the assignment to Pessin, which was recorded on October 16, 1987, was not only omitted from the complaint but could not have been discovered as of the date indicated that the complaint was signed. Cf. Gutermuth v. Ropiecki, 159 N.J. Super. 139, 148, 387 A.2d 385 (Ch.Div. 1977). A notice of lis pendens was filed on November 6, 1987 under the caption of the foreclosure action. This lis pendens, captioned in the cause, was filed after the recordation of the assignment of the second mortgage.
The foreclosure action proceeded uneventfully. Eventually, the property was sold to Citicorp at a sheriff's sale on May 11, 1988 for $108,487. A sheriff's deed to Citicorp was recorded on June 20, 1988. It appears from a certification of Citicorp's attorney submitted to the trial court that on December 6, 1988 Pessin advised them that he and others were the assignees of the Grillo mortgage.
Citicorp then instituted an action against the assignees.[3] It moved for summary judgment and to strike Pessin's answer which was filed in that action. Judge Bachman in a March 23, 1989 written opinion refused to place the second mortgagee in a superior position to that of the first mortgagee. He accorded an equitable remedy to Pessin of the right to redeem the property and pay off the entire senior debt within 60 days. The judge stated:

*610 It is clear that the junior encumbrancer must pay the whole amount of the senior mortgage debt, not the foreclosure sale price, if he is to redeem from the senior lienholder.... [Citations omitted.] This is because the senior lienholder is entitled to payment of his just debt, if the junior lienholder redeems. [Citations omitted.]
The present record does not indicate the property worth, sale price, etc. However, in the present strict foreclosure action the junior mortgagor must be given a reasonable opportunity to redeem from the senior lienholder by payment in full of the senior debt, which is revived for purposes of this action.
Defendant's answer cannot be summarily struck, and strict foreclosure entered to cut off defendant's interest, in light of the above analysis. Equity recognizes that defendant has a valid security interest in the property, as well as that plaintiff is entitled to a recovery on its debt, or removal of the cloud on its legitimate property interest....
It would be unfair to make plaintiff wait six months for defendant's action on speculation that plaintiff might seek a deficiency judgment whereby opening the sale for six months. It is also unfair to hold defendant to the 10 day redemption period when an objection to sale is made. R. 4:65-5.
In this case, it is unclear whether the property is valuable enough to warrant the above described action required of defendant. This is a decision for him to make. Defendant will be given 60 days from the date of this opinion within which to exercise his right of redemption and pay off the entire senior debt. If he does not do so, plaintiff shall then be entitled to a judgment of strict foreclosure.
Essentially, Pessin's argument on this appeal is that if strict foreclosure were denied to Citicorp, then he should have a lien on the property in the amount of the second mortgage. He argues that the title searcher, if negligence could be proven against him, would be liable to Citicorp for the sum necessary to satisfy this mortgage. He concludes that if his mortgage was thus paid by Citicorp the lien would be discharged and title would be free and clear of liens.
Pessin also challenges the viability of strict foreclosure on the grounds that it is a harsh doctrine which is not followed in a majority of jurisdictions in this country. He acknowledges that it has not been seriously reexamined in this State in over 50 years. He buttresses his argument with a reference to the following findings of the trial court:
Where an omitted junior lienholder is involved, strict foreclosure has generally only been granted when some fault is present on the part of the junior lienholder. In N[ew] J[ersey] the remedy has been implemented when the junior lienor had actual knowledge of the defective foreclosure and delayed in *611 asserting his claim, or when there has been fraud in the transaction. [Citations omitted.] In the instant case, there is no proof of fraud, prejudicial delay or other fault of the omitted party which warrants strict foreclosure at this juncture.
Since the trial judge found no fault on the part of the junior lienholder, Pessin argues that the remedy accorded should not have been ordered since it amounted to strict foreclosure against him. He again presses his argument that Citicorp should have been compelled to satisfy his mortgage and seek redress from its title searcher. We reject Pessin's arguments.
Aside from the fact that we do not consider it appropriate as an intermediate appellate court to overrule long-standing precedent, including decisions of the former Court of Errors and Appeals, we are satisfied that a complainant in a foreclosure action who purchases in good faith at the foreclosure sale is entitled to file a complaint to force an outstanding junior lienor to redeem its mortgage or be foreclosed of the equity of redemption.
In Parker v. Child, 25 N.J. Eq. 41 (Ch.Div. 1874), it was held that where a first mortgagee forecloses his mortgage, but omits making the second mortgagee a party to the suit, the rights and equities of the parties not named are unaffected. The second mortgagee was thus entitled to redeem the property within a reasonable time or be foreclosed of the equity of redemption. Similarly, in Sears, Roebuck & Co. v. Camp, 124 N.J. Eq. 403, 1 A.2d 425 (E. & A. 1938), the Court of Errors and Appeals held that strict foreclosure is available when a foreclosing mortgagee fails to discover an outstanding junior mortgagee. There the first mortgagee purchased the property at the foreclosure sale for a nominal amount and then resold it to an innocent third party. The court held:
Yet strict foreclosure is still an appropriate remedy where, in the special circumstances, it will subserve equity and justice. This is particularly the case where, through the customary foreclosure by judicial sale or a conveyance by the mortgagor, the legal and equitable estates have become united in the mortgagee, who is also in possession under his legal title, and some outstanding junior interest has not, by reason of pure inadvertence, not aggravated by bad *612 faith, been barred by the decree. Such is the established practice in this State. [Citations omitted.] Id. at 409, 1 A.2d 425.
The court also noted:
It is not suggested that Camp is entitled, at his option to a foreclosure by judicial sale as an incident of his contract, ... and the question is therefore not before us. Id. at 413, 1 A.2d 425.
Pessin has not urged that the proper remedy should have been a judicial sale, rather than strict foreclosure. See Powell v. Giddens, 231 N.J. Super. 49, 53, 555 A.2d 4 (App.Div. 1989). See also 30 N.J.Practice (Cunningham and Tischler, Law of Mortgages) § 201 at 52 (1975). The effect of Pessin's argument would be to elevate the second mortgage to a position superior to the first mortgage as a result of the failure to include the assignment of the mortgage in the original foreclosure action. Pessin's rights as an assignee of the second mortgage cannot rise higher than those of the second mortgage. See Davis v. Cressman, 57 N.J. Eq. 619, 621, 42 A. 768 (E. & A. 1899); S.D. Walker, Inc. v. Brigantine Beach Hotel Corp., 44 N.J. Super. 193, 208, 129 A.2d 758 (Ch.Div. 1957); Rose v. Kimball, 16 N.J. Eq. 185 (Ch.Div. 1863). We are satisfied that the Chancery Division Judge appropriately concluded that there was an inadequate remedy at law here under the circumstances.
Strict foreclosure is a recognized remedy in this State. Sears, Roebuck & Co. v. Camp, supra (124 N.J. Eq. 403, 1 A.2d 425).[4] The remedy grew out of equitable concerns where there was a default on a mortgage. Prior to the remedy of strict foreclosure, upon default the mortgagee was entitled to a right of possession of the mortgaged property. Id. at 407, 1 A.2d 425. However, with the advent of strict foreclosure, the right to redeem the property was recognized. Ibid. Eventually, foreclosure by judicial sale became the usual practice with the *613 passage of statutes providing for this disposition. See Steffel v. Grissler, 129 N.J. Eq. 425, 19 A.2d 798 (E. & A. 1941).
Generally, there are various remedies available to a purchaser of property at a foreclosure sale when a junior lienor has been omitted from the foreclosure proceedings. These remedies include:
... proceedings de novo to foreclose, or a suit to compel the junior lienholder to redeem, and, upon his failure to do so, to forever bar him from redemption... [or] [i]f the purchaser prefers, he may pay the amount of the junior lien and thereby prevent redemption or foreclosure. [55 Am.Jur.2d, Mortgages, § 852 (1971).] [Footnotes omitted.]
The Chancery Division Judge did not consider in his opinion the date of the foreclosure complaint as compared with the recording date of the assignment and the filing date of the foreclosure action. The judge essentially left the parties in the position they would have been in had the error not occurred. He stated:
The rights of an omitted junior mortgagor are neither enlarged or diminished, but retained, when a defective foreclosure sale occurs. [Citation omitted.] This principle is a two-edged sword. Although legal and equitable title merge in the purchasing senior lienholder, the omitted junior lienor's claims cannot rise higher than they were before the defective sale. [Citations omitted.]
We conclude that Judge Bachman's decision was consistent with the policy of the foreclosure statutes and the recording acts.
In Gutermuth v. Ropiecki, supra (159 N.J. Super. at 143-145, 387 A.2d 385) a quiet title action was involved. The purchasers instituted suit and sought to declare a judgment void which had been docketed against one of the grantors of the property after the conveyance, but before the purchasers' deed and mortgage were recorded. The court held that the purchasers were entitled to invoke the doctrine of equitable subrogation because they had retained funds in escrow to satisfy the known existing mortgages and judgments. They were entitled to stand in the shoes of those lienholders and thus claim priority over the judgment docketed just before the purchasers' deed and mortgage were recorded. In essence, the *614 discharged liens were resurrected for the purposes of determining priority.
Here, Citicorp was aware of and joined the second mortgagee in the foreclosure. It was not actually aware of the existence of the assignment at the time it purchased the property at the foreclosure sale. The judge's determination is consistent with and protects the priorities in place prior to the foreclosure as best as possible. It is true that there are intangibles which cannot be measured after the fact, such as whether Pessin could have driven the price up sufficiently at the sheriff's sale to satisfy both liens. The remedy afforded Pessin here gives proper regard to the priorities prior to the sale, as well as according some relief to Pessin.
Affirmed.
NOTES
[1] The mortgage was originally given to Citicorp Homeowners, Inc. That entity was consolidated into Citicorp Mortgage, Inc.
[2] Although these recorded documents are not in the record below they have been referred to in the certifications, and they have never been forwarded to us. We take judicial notice of them. See Evid.R. 9(2)(e) and 12(2). Cf. Dorn v. Transport of New Jersey, 200 N.J. Super. 159, 165, 491 A.2d 1 (App.Div. 1984); N.J.Sports & Exposition Auth. v. Cariddi, 84 N.J. 102, 107, 417 A.2d 529 (1980) (J. Schrieber concurring).
[3] Defendants Theresa Klein and Richard Hollander were named as assignees on the mortgage and were also named as defendants in Citicorp's strict foreclosure action. No answer or action was ever taken by the codefendants and they have not appeared on this appeal.
[4] We acknowledge that this remedy is not recognized in every state. Nineteen states appear to permit strict foreclosure in some circumstances. See 3 Powell, The Law of Real Property, § 469, n. 6 (1989).